# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

MEDICAL ASSOCIATES HEALTH
PLAN, INC., d/b/a MEDICAL
ASSOCIATES HEALTH
MAINTENANCE ORGANIZATION,

        Plaintiff,

vs.

CIGNA CORPORATION,

        Defendant.

No. C04-1025-LRR

**ORDER**

_____

**TABLE OF CONTENTS**

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*    *THE UNDISPUTED FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . **2**

       *A.*     *The Contract* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

       *B.*     *The Lawsuit* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*III.*   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*IV.*   *THE MERITS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

       *A.*     *Medical Associates' Motion for Partial Summary Judgment* . . . . . **5**

            *1.*     *CIGNA is a Party to the Group Contract* . . . . . . . . . . . . . **7**

            *2.*     *The Group Contract Governs* . . . . . . . . . . . . . . . . . . . **10**

       *B.*     *CIGNA's Motion for Summary Judgment* . . . . . . . . . . . . . . . **13**

*V.*     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

# I. INTRODUCTION

There are two motions before the court in this breach-of-contract lawsuit. Plaintiff Medical Associates Health Plan, Inc., d/b/a Medical Associates Health Maintenance Organization ("Medical Associates"), filed a Motion for Partial Summary Judgment (docket no. 17). Defendant CIGNA Corporation ("CIGNA") filed a Motion for Summary Judgment (docket no. 18). Because the issues in the motions overlap, the court considers them together in this order.

The court concludes CIGNA breached the parties' contract. The court therefore grants Medical Associates' Motion for Partial Summary Judgment and denies CIGNA's Motion for Summary Judgment.

# II. UNDISPUTED FACTS

## A. The Contract

Medical Associates is an Iowa corporation with its principal place of business in Dubuque, Iowa. CIGNA is a Delaware corporation with its principal place of business in Pennsylvania. On December 19, 2003, Medical Associates and CIGNA entered into a written contract entitled "Group Contract for Cigna" ("Group Contract").

In the Group Contract, Medical Associates agreed to provide health maintenance benefits to eligible CIGNA employees who subscribed to Medical Associates' plan. In return, CIGNA agreed to make monthly premium payments to Medical Associates. The amount of each payment depended upon the number of eligible CIGNA employees who were subscribers to Medical Associates' plan.

An attachment to the Group Contract stated that any employee CIGNA deemed eligible was eligible to subscribe to Medical Associates' plan. The only persons who subscribed to Medical Associates' plan were Dubuque, Iowa, employees of Connecticut General Life Insurance Company ("CGLIC"), a CIGNA subsidiary.

The term of the Group Contract was from January 1, 2004 to December 31, 2004.

The Group Contract automatically renewed each subsequent year, unless either party "at the end of any contract term" gave "written notice to the other at least sixty (60) days prior to the projected date of the termination."

A generic Group Subscriber Agreement ("Subscriber Agreement") was attached to the Group Contract. The Subscriber Agreement governed each subscribing CIGNA employee's medical coverage. The Subscriber Agreement was "continuable and renewable each month" so long as premiums were paid. The Group Subscriber Agreement included a termination provision. Any individual employee, or CIGNA on his or her behalf, could cancel medical coverage "at any time" by "giving written notice 31 days in advance."

On January 1, 2004, Medical Associates began providing CGLIC employees in Dubuque with health maintenance benefits. CGLIC, not CIGNA, paid the monthly premiums under the contract. It is unknown how many CGLIC employees subscribed to Medical Associates' plan, but CGLIC paid approximately $150,000 each month in premiums to Medical Associates.

### B. The Lawsuit

This lawsuit was set in motion by events occurring weeks before the signing of the Group Contract. On November 17, 2003, CIGNA agreed to sell CGLIC to Prudential Financial, Inc. ("Prudential"), on March 31, 2004. On March 23, 2004, Medical Associates sent CIGNA a letter. Medical Associates stated it had recently learned of the fast-approaching sale. Medical Associates wrote:

> This letter will serve to remind you that [CIGNA] remains contractually bound to the annual Medical Associates Group Contract dated January 2004 through its expiration on December 31, 2004.
> . . . .
> Medical Associates objects to any unilateral and premature termination of the contract without cause. The governing document is the Group Contract executed by both parties on December 19, 2003. [CIGNA] does not have the right to

unilaterally terminate the agreement prior to December 31, 2004. Medical Associates' contract with [CIGNA] was a key element in our strategic planning . . . . [W]e have made a preliminary calculation and Medical Associates conservatively estimates it will sustain damages of at least $366,000 if [CIGNA] breaches the agreement by early termination.

. . . .

Medical Associates does not consent to early termination.

. . . .

Please contact [Medical Associates] as soon as possible to confirm that [CIGNA] will honor the agreement through the December 31, 2004 term.

On April 9, 2004, CIGNA responded in a letter. CIGNA stated:

On April 1, 2004, employees of CIGNA Companies in Dubuque joined Prudential . . . . Now that the sale is completed, we no longer have an employee population in your area and are canceling our medical contract with you.

CGLIC stopped making premium payments, and CIGNA did not make any either. Medical Associates terminated coverage for all CGLIC employees retroactive to March 31, 2004.

On May 27, 2004, Medical Associates sued CIGNA in a one-count complaint for breach of contract. On July 9, 2004, CIGNA filed an Answer in which it denied it breached the contract. Medical Associates filed the instant Motion for Partial Summary Judgment on July 8, 2005. CIGNA filed the instant Motion for Summary Judgment on the same date.

### III. PRINCIPLES OF REVIEW

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*,

409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005); *Woods*, 409 F.3d at 990.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Anderson*, 477 U.S. at 248. The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Summary judgment "may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Fed. R. Civ. P. 56(c).

### IV. THE MERITS

The parties' summary judgment motions overlap. The motions urge competing constructions of the same provisions of the Group Contract and the Subscriber Agreement. In deciding Medical Associates' Motion for Partial Summary Judgment, the court therefore necessarily resolves CIGNA's Motion for Summary Judgment. Thus, the court first considers Medical Associates' Motion for Partial Summary Judgment.

### A. Medical Associates' Motion for Partial Summary Judgment

In its Motion for Partial Summary Judgment, Medical Associates asks the court to rule as a matter of law that CIGNA is liable under the parties' Group Contract. That is, Medical Associates claims the court can rule as a matter of law that it has established all the elements of a breach of contract claim. The only issue that the jury must determine is the amount of damages.

To prove a breach-of-contract claim, a plaintiff must prove:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224-25 (Iowa 1998) (citing *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch,* 497 N.W.2d 821, 825 (Iowa 1993)).[1] In this case, Medical Associates claims (1) the Group Contract is the relevant agreement between the parties; (2) according to the plain language of the Group Contract, CIGNA could not terminate the relationship until December 31, 2004; (3) Medical Associates fully performed its end of the bargain; (4) CIGNA breached the Group Contract when it unilaterally "cancelled" the Group Contract in its April 9, 2004 letter and failed to make premium payments; and (5) Medical Associates suffered damages, including lost profits.

The parties' dispute is legal, not factual, and revolves around Medical Associates' ability to prove the first, second, and fourth elements of its breach-of-contract claim.[2] In

---

[1] The Group Contract states that Iowa law governs. Because the parties assume the same, the court uses Iowa law to construe the contract.

[2] The third and fifth elements of Medical Associates' breach-of-contract claim are not at issue in this order. It is undisputed that Medical Associates performed all the terms

(continued…)

its Resistance to Medical Associates' Motion for Partial Summary Judgment, CIGNA gives two reasons why the motion should not be granted. First, CIGNA disputes the existence of a binding agreement between the parties, the first element of Medical Associates' breach-of-contract claim. CIGNA claims Medical Associates had a contract with CGLIC, not CIGNA. Second, CIGNA disputes Medical Associates' construction of the parties' agreement, the second element of Medical Associates' breach-of-contract claim. CIGNA maintains the terms of the Subscriber Agreement, not the Group Contract, governs its April 9, 2004 cancellation. In this respect, CIGNA also challenges Medical Associates' ability to prove the fourth element of its breach-of-contract claim, namely, that CIGNA breached the Group Contract. The court considers each of these arguments in turn.

### 1.  CIGNA is a Party to the Group Contract

Although CIGNA has admitted at various stages in the litigation that it "entered into a contract with Medical Associates," CIGNA denies it is a party to the Group Contract. CIGNA argues that CGLIC and Medical Associates are the parties to the Group Contract. CIGNA contends CGLIC is therefore liable for nonpayment of premiums.

CIGNA first notes that the Group Contract identifies the party contracting for health maintenance benefits as "CIGNA," not "CIGNA Corporation." CIGNA points out that "CIGNA" is "merely a service mark owned by a separate company called CIGNA Intellectual Property, Inc." CIGNA also points out the only employees actually covered under the Group Contract were CGLIC employees and CGLIC made all premium payments to Medical Associates. CIGNA therefore concludes CGLIC, not CIGNA, is the contracting party.

---

[2](…continued)
and conditions of the Group Contract until the time of CIGNA's alleged breach. Medical Associates also admits the amount of damages is a factual dispute for the jury to decide and, hence, only seeks partial summary judgment. *See* Fed. R. Civ. P. 56(c).

The court concludes there is no genuine issue of material fact as to the identity of the party to the Group Contract. Clearly, CIGNA is the party to the Group Contract, not the trademark "CIGNA" or CGLIC. The contract is entitled "Group Contract for Cigna." The first line of the contract states: "THIS IS AN AGREEMENT BETWEEN [Medical Associates] and Cigna." (Emphasis in original.) Furthermore, it is undisputed that Susan Strug, CIGNA's Benefits Consultant, signed the contract. Although CIGNA now apparently disputes whether Strug had the authority to sign the Group Contract on behalf of CIGNA, there is no evidence in the record substantiating this claim. To the contrary, CIGNA admitted in an answer to an interrogatory that Strug "executed the contract as the authorized agent for CIGNA corporation . . . ."[3]

It does not matter that there is extrinsic evidence that CIGNA entered into the Group Contract for the benefit of third parties, namely, its subsidiary, CGLIC, and employees of CGLIC. CIGNA, not CGLIC, signed the Group Contract. A party is generally bound to honor contracts the party signed. *See Kuehl v. Freeman Bros. Agency, Inc.,* 521 N.W.2d 714, 719-20 (Iowa 1994); *see also Joseph L. Wilmotte & Co. v. Rosenman Bros.,* 258 N.W.2d 317, 323 (Iowa 1977). Further, CGLIC is not mentioned in the Group Contract. "In construing a written contract, the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says." *Estate of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 343 (Iowa 2005) (internal quotation omitted).

Even assuming the assertions pertaining to CGLIC are true, CGLIC was a third-party beneficiary of the contract, not a party to the contract. "Where performance will

---

[3] Even if CIGNA had presented the court with an affidavit to contradict this admission, it would be unavailing. A party opposing summary judgment may not create a "sham" issue of fact by filing such a contradictory affidavit. *See, e.g., Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030-31 (8th Cir. 2000) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983)).

benefit a person other than a promisee, that person is a beneficiary." Restatement (Second) of Contracts § 2(4) (1981). A beneficiary of a contract is not transformed into a party to the contract simply because the beneficiary makes payments on the contract. Although the record suggests CIGNA's duty to make payments to Medical Associates was delegated to CGLIC, such suggestion does not make CIGNA a non-party to the Group Contract.[4] Stated differently, even if CIGNA delegated the duty to make payments under the Group Contract to CGLIC, CIGNA is still liable.

> Many a debtor wishes that by such an expression of an intention to delegate he could get rid of his debts . . . . [Nonetheless, t]he debtor's duty remains absolutely unchanged. The performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped.

*In re Integrated Res. Life Ins. Co.*, 562 N.W.2d 179, 182-83 (Iowa 1997) (quoting 4 Arthur L. Corbin, *Corbin on Contracts* § 866 (1951) (citations and alterations omitted)).

A party such as CIGNA "may not avoid [its] contractual obligation without a contract to the contrary, *i.e.,* a novation." *B & H Apartments P'ship v. Tharp,* 466 N.W.2d 694, 696 (Iowa Ct. App. 1990). Novation is not presumed. *Integrated Res.*, 562 N.W.2d at 182. The party asserting it must prove "(1) a previous valid obligation, (2) agreement of all parties to the new contract, (3) extinguishment of the old contract, and (4) validity of the new contract." *Id.* There is no evidence in the record of a novation. CIGNA is the party to the contract and is bound to honor it. *See Kuehl,* 521 N.W.2d at 719-20.

### 2. The Group Contract Governs

CIGNA argues that, even if it is a party to the contract, it has not breached the contract. CIGNA maintains it properly cancelled the contract on April 9, 2004 because

---

[4] The court notes that there is no evidence in the record of such a delegation other than the mere fact of the payments.

it gave Medical Associates written notice of cancellation on February 17, 2004. CIGNA claims it sent the requisite notice on February 17, 2004, which is when a CIGNA employee sent a Medical Associates' Account Executive an email.[5] CIGNA claims the terms of the Subscriber Agreement largely govern this dispute, and therefore it could justifiably cancel the contract after giving 31 days notice. Medical Associates claims the Group Contract governs. The Group Contract does not permit CIGNA to cancel before December 31, 2004, even if advance notice is given.

The construction of a contract is generally a question of law for the court to decide. *See Magina v. Bartlett*, 582 N.W.2d 159, 163 (Iowa 1998). It is therefore appropriate to resolve this case at the summary judgment stage.

The court concludes the Group Contract governs. The language that CIGNA relies upon in the Subscriber Agreement is limited in scope to the Subscriber Agreement itself and does not cover the Group Contract. The relied-upon language states: "*This Subscriber Agreement* may be canceled at any time by the Member or Member's Employer by giving written notice 31 days in advance." (Emphasis added.).

The Subscriber Agreement is not the governing contract between CIGNA and Medical Associates. The Subscriber Agreement states it was part of the "agreement between [Medical Associates] and you, the Subscriber." That is, the Subscriber

---

[5] The email stated:

> I know that we put you on notice about cancellation at the end of March. At the outside chance we need to extend the coverage for a few additional months, is that doable and if so, when would you need to know. It looks like it may take longer than expected to get all the approvals.

The parties dispute whether this was sufficient notice. Because the court ultimately concludes CIGNA was not permitted to cancel the contract until December 31, 2004, it need not resolve this dispute.

Agreement is not a contract between Medical Associates and CIGNA, but rather a contract between Medical Associates and subscribers. The notice provision CIGNA refers to in the Subscriber Agreement is simply the mechanism by which individual employees leaving employment at CIGNA could terminate their health maintenance benefits, or through which CIGNA could terminate such benefits for them.

It is true the Subscriber Agreement was attached to the Group Contract. The Subscriber Agreement was attached to the Group Contract because the Group Contract specified that Medical Associates was required to "provide health maintenance benefits to [CIGNA] employees who are subscribers according to the provisions of the Subscriber Agreement . . . and subject to the limitations and exclusions therein." The Subscriber Agreement lists the specific terms of Medical Associates' coverage, such as what medical services are covered, the maximum benefits, the method of payment to physicians, and various exclusions. The Group Contract, on the other hand, is the governing agreement between the parties to this dispute, CIGNA and Medical Associates. It is the framework within which individual Subscriber Agreements are authorized.

Even if the court were to assume the Subscriber Agreement and the Group Contract were both contracts between Medical Associates and CIGNA, the court would not adopt CIGNA's interpretation of the competing termination provisions. CIGNA's interpretation ignores the termination provision of the Group Contract. CIGNA's interpretation renders the termination provision of the Group Contract superfluous; it would make no sense to have one provision forbid cancellation until December 31, 2004 and another provision allow cancellation after giving 31 days notice. A court must "assume no part of the contract is superfluous or of no effect and a construction giving meaning to all its clauses is preferred." *See Estate of Pearson*, 700 N.W.2d at 343. Thus, the cancellation provision of the Group Contract permitted CIGNA to end its contract with Medical Associates, and the cancellation provision of the Subscriber Agreement permitted

individual employees or CIGNA to cancel such employees' health maintenance benefits.

At best, CIGNA seems to contend that it cancelled coverage for all its employees when it invoked the cancellation provision of the Subscriber Agreement. That is, in the February 17, 2004 email CIGNA was simply providing notice that it would have no "eligible" employees.

At the outset, the court seriously questions the validity of this argument in light of the well-settled rule that "[c]ontractual obligations may arise from implication as well as from the express writing of the parties." *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.* 266 N.W.2d 22, 27 (Iowa 1978); *see also Wood v. Lucy, Lady Duff-Gordon*, 118 N.E. 214, 214-15 (N.Y. 1917) (same). In cases where the compensation due under the contract depends on the efforts of a party, the Iowa Supreme Court has remarked that "there will nearly always be found an implied promise of diligent and careful performance in good faith and of forbearance to make performance impossible by going out of business or otherwise." *Pundzak, Inc. v. Cook*, 500 N.W.2d 424, 427 (Iowa 1993). It would appear that the Group Contract necessarily implied that CIGNA would offer Medical Associates' plan to at least some employees.

Setting aside this concern, the court concludes CIGNA's argument still lacks merit. Even if CIGNA had no eligible employees subscribing to Medical Associates' plan on March 31, 2004, the contract itself would still be in force. CIGNA could not unilaterally "cancel" the contract at any time because CIGNA might deem other employees eligible in the coming months.

The Group Contract included a provision by which Medical Associates could terminate the Group Contract based on the number of employees who were enrolled in Medical Associates' plan. The Group Contract stated:

> If at any time less than 2 of [CIGNA's] employees are enrolled, [Medical Associates] may terminate this Contract and all contracts it has with [CIGNA's] employees by giving

> written notice of cancellation to [CIGNA] which shall be effective 90 days after the date thereof.

Importantly, this provision does not allow CIGNA to terminate the Group Contract. Therefore, CIGNA only could have terminated the Group Contract after December 31, 2004.

For the foregoing reasons, the court concludes CIGNA breached the Group Contract when it unilaterally cancelled it before December 31, 2004. Accordingly, the court grants Medical Associates' Motion for Partial Summary Judgment. Having established liability, this matter shall proceed to trial on the issue of damages. *See* Fed. R. Civ. P. 56(c).

### B. *CIGNA's Motion for Summary Judgment*

In its Motion for Summary Judgment, CIGNA argues it is entitled to judgment as a matter of law on account of the termination provision of the Subscriber Agreement and the fact that it notified CIGNA of cancellation on February 17, 2004. CIGNA incorporated this entire summary judgment motion in its Resistance to Medical Associates' Motion for Partial Summary Judgment. The court discussed this same argument in its discussion of Medical Associates' Motion for Partial Summary Judgment and determined the argument lacked merit. The court therefore denies CIGNA's Motion for Summary Judgment.

### V. *CONCLUSION*

In light of the foregoing, IT IS ORDERED:

1.    Plaintiff Medical Associates' Motion for Partial Summary Judgment (docket no. 17) is GRANTED;

2.    Defendant CIGNA's Motion for Summary Judgment (docket no. 18) is DENIED;

and

3.      This matter shall proceed to trial as scheduled on the issue of damages.


**SO ORDERED.**

**DATED** this 6th day of October, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA